GEORGE W. METZ *et al.,* School Directors, etc., Plaintiffs in Error, *v.* JAMES L. ANDERSON *et al.,* Defendants in Error.

ERROR TO SCHUYLER.

While the court will interfere with the action of school trustees, in relation to school districts; still it should appear, in order to justify interference, that there has been gross injustice, oppression or corruption. Acquiescence in the action of the trustees will be a reason for non-interference.

The acts of trustees in levying taxes will not be tried by bill.

If an illegal tax is collected, the remedy is at law.

The right to hold the office of school trustee must be inquired into by the appropriate writ, not by bill in equity.

THIS bill alleges that the trustees, in April, 1855, laid off and divided the township into nine districts, according to plat; that upon division, the inhabitants of district nine organized, purchased a school-house, and maintained schools until October, 1857, and levied sufficient tax to pay for school-house, ($2,050); that, on 5th October, 1857, the trustees, at the instance of citizens of district eight, without the knowledge or consent of a majority of district nine, and without consulting and without regard to the wishes and convenience of a large majority of the inhabitants of the township, passed an order re-districting said township, and consolidated districts eight and nine under description of district eight, and made and filed a map for record. On which, district eight organized and contracted a heavy debt in the purchase of a school-house, a large portion of which remains unpaid.

On the day of consolidation, elections for directors were held in each district; complainants were chosen in district nine, and believing that the trustees would, at the next meeting, rescind the order on being fully satisfied that it was made without consulting the wishes and convenience of a majority of the inhabitants of the township and of said district nine, complainants refrained from acting as directors.

At the meeting of trustees, in 1858, complainants and citizens of district nine protested against the order for consolidation, and asked its rescinding.

That defendants, named as trustees, were trustees at the filing of bill, and at the meeting in April, 1856, and refused to grant the prayer of petitioners.

That on the 3rd of July, 1858, complainants, as trustees of district nine, levied 30 cents on each $100 taxable property.

That in 1857, consolidated district eight chose Metz, Worthington and Cunningham, directors, who claimed to be directors, took possession of the school-house and of district nine, made an assessment of 40 cents for general school purposes, and 30 cents for paying teachers, and filed levy with the county clerk.

That complainants, on the 4th October, 1858, were again elected directors of district nine.

Alleges defendant, Ryan, to be town collector, and Peter L. Campbell, county collector.

That defendant Neill, as county clerk, refused to enter upon tax-books the levy made by complainants, and extended assessment made by district eight, and delivered books so extended to Ryan; that Ryan threatens to collect the taxes from citizens unless restrained.

That complainants reside in district nine, and are owners of property subject to taxation; that complainants have called on said trustees and requested them to rescind the order of consolidation, and shown them that said order was made without the knowledge of complainants and a majority of citizens of district nine, and in opposition to and without consulting the wishes and convenience of a majority of the inhabitants of the township; that complainants have requested the trustees of district eight to refrain from asserting authority over district nine, and to surrender the house, etc., to them; that they have requested Neill to extend the levy made by them on the tax-books, which they refuse.

The bill charges confederacy and refusal to comply, and that defendants pretend that consolidation was done according to law; and that defendants, as directors of district eight, have a right to hold, as such, and assess and collect said tax; and that Neill, as clerk, is bound to disregard the assessment made by defendants, and to extend the assessment made by complainants.

And charges that the consolidation was made without the knowledge of citizens of district nine, and without regard and without consulting the wishes and convenience of a majority of the inhabitants of the township, and null and void as to district nine.

That defendants, directors of consolidated district eight, are

not such directors, and have no authority to hold property of district nine, and no authority to assess upon property in district nine; that Neill should not have extended said tax, but should have extended that levied by complainants.

That complainants and inhabitants of district nine are without legal remedy; that it is intention of defendants to force district nine to aid citizens of district eight to pay their debt improvidently contracted.

The bill charges that it is the intention of Ryan to collect the tax; that it is the intention of Campbell to collect such as comes to him for collection; that the trustees should be required to rescind said order of consolidation; that directors of district eight should surrender to complainants, school-house of district nine, and that Neill should be required to extend on tax books the levy of complainants; that defendants' actings, doings, and pretenses are contrary to equity.

The bill makes defendants as in title, waives answer on oath, and prays for general relief, injunction and summons.

Injunction allowed, recorded and issued.

The answer of the school directors denies that complainants are school directors of district nine, or that any such school district exists in law or fact, and alleges and insists that complainants have no right or authority to assume or act as such, and alleges that said complainants never have acted, in fact, as such directors, except to join with respondents as directors of original district eight, in giving notice of an election for school directors of said consolidated district.

And that after respondents were elected directors of said consolidated district, said directors of district nine, surrendered to respondents the direction and management of the school-house and schools in said original district nine, which respondents, as such directors, took charge of, and maintained therein public schools.

Respondents admit that the said trustees, at an adjourned meeting, 21st April, 1855, laid off and districted said township into nine school districts, but deny that said trustees made, certified and caused to be recorded a plat thereof, as is required by law.

Respondents also allege that said subdivision was the division of original district number three, in said township, and was made by said trustees without consulting the convenience and wishes of the inhabitants of said township, and was done without their knowledge and against their wishes and interest; was partial to the inhabitants of said district nine, and prejudicial and unjust to the inhabitants of said district eight, in this, etc.

Respondents admit, that district nine organized and elected

30

directors, who purchased a school-house sufficient to accommodate all pupils of said district, and maintained schools as district nine until April, 1857. That from and after said time, the said directors wholly submitted to the direction of respondents as directors of said consolidated district eight. Respondents allege that the said directors purchased said school-house without a vote of the district, and at a price exceeding $2,000.

Respondents admit, that during the time aforesaid, and not otherwise, directors of said district nine acted as directors, levied sufficient taxes to pay for the lot, school-house and furniture, but deny that said taxes were appropriated and applied in payment of the purchase money for said lot, etc., as alleged in the bill.

And allege that the taxes so levied were levied without the vote of the inhabitants of district nine and that $400 of the purchase money of the lot and school-house were, on the 26th February, 1858, paid by the directors of district eight, from the school funds of said district on the application of a majority of complainants, a portion of which purchase money was applied to and for the individual use of two of said directors. Respondents also allege that during the existence of said district nine, a large sum of money of the funds belonging to said district eight, was applied by the trustees of the township in the payment of arrearages due teachers in district nine, on their schedules, which was never refunded to district eight.

Respondents admit that the school-house in district nine has been conveyed to the trustees for the use of district nine, and insist, that by law said school-house is now held for the use of the inhabitants of present district eight, comprising all the inhabitants of original district nine; that in it, the inhabitants of district nine have not contributed more than their share, etc.

At October term, 1859, the following decree was made, entered by BAILEY, Judge :

"And now, on this day, this cause came on for hearing, upon bill, answer, replication, exhibits, depositions and process. And the court being sufficiently advised in the premises, it is adjudged, ordered and decreed, that the said defendants, and each of them, be perpetually enjoined and restrained from collecting any and all school tax levied and assessed against the property included in the boundaries mentioned, on the temporary injunction heretofore issued herein, for the year 1858 ; and that said temporary injunction is hereby made perpetual. And that the defendants pay the costs of this proceeding, to be taxed by the clerk of the said Circuit Court,"

The following is the assignment of errors :

1. The court erred in not dismissing complainants' bill for

want of jurisdiction; for want of equity; and for reason, complainants have a complete remedy at law.

2. The court erred in the order, decreeing a perpetual injunction, restraining the collection of the taxes, as restrained.

3. The court erred in decreeing defendants to pay the costs of this suit.

C. L. HIGBEE, for Plaintiffs in Error.

M. HAY, for Defendants in Error.

BREESE, J. It is contended by the counsel for the defendants in error, that the action of the school trustees, consolidating districts eight and nine into one district, was inequitable, and a gross abuse of their powers—so gross as to justify the interference of a court of equity to annul their act, it being a case not of the simple abuse of powers, but the inequitable exercise of conceded legal powers, and comes within the principles decided in the case of *Grove* v. *The School Inspectors of Peoria,* 20 Ill. R. 541.

In that case it was said, " to lay off and divide the city into school districts, and from time to time, alter them or create new ones, as circumstances may require, is a very difficult duty to perform, and it is not reasonable to expect, however just, wise and impartial they may be, that there will be no single complaint. It requires much deliberation and the exercise of sound judgment, and in such case a court could not well interfere, unless gross injustice had been done, or the marks of corruption. in the board so evident as to compel the court to interpose."

In the case of the same board of inspectors against the people, *ex relatione* Grove, ib. 531–2, we said, " The board of inspectors are vested with a large discretion in the performance of their important duties, and courts will not attempt to control its exercise, except in a palpable case where a plain violation of the law is manifested."

We shall be governed, in deciding this case, by the views therein expressed, and if a plain violation of the law is manifested in a palpable case where gross injustice has been done, or corruption manifested, we will not hesitate to interfere and afford the requisite relief.

We think this case depends wholly upon the construction to be put upon the thirty-third section of the act of 1857, " to establish and maintain a system of free schools." (Scates' Comp. 440.) That section provides that, " Trustees of schools shall lay off the township into districts to suit the wishes and convenience of a majority of the inhabitants of their townships,

and shall prepare, or cause to be prepared, a map of their township, as often as may be necessary, on which shall be designated districts, to be styled district No. ——, in township No. ——, which they may alter or change at any regular session; which map shall be certified by the president and clerk of the board, and filed with, and recorded by the county clerk, in a book to be kept for that purpose, to be paid for out of the county treasury : *Provided,* that school districts may be formed out of parts of two or more townships or fractional townships; in which case the trustees of the schools of the townships interested shall act in conjunction in the formation of such district. When a new district is formed from one or more districts, the trustees shall make division of any tax funds which are, or may be, in the hands of any officer, in proportion to the amount of taxes collected from the property remaining in each district; and it shall be the duty of the officer to pay the same on the order of the trustees."

The charge in the bill is, that the order of October 5, 1857, re-districting the township, by which districts eight and nine were consolidated to form district eight, was made without consulting the wishes and convenience of a majority of the inhabitants of district nine, or of the township at large.

This allegation is denied by the answer, and the trustees who made the order testify that, at the time they made it, it did suit the wishes and convenience of the majority of the inhabitants of the township, as they then thought and believed, and still think.

There is some proof to show that it was not in accordance with the wishes or convenience of district nine, or of the township; but the law does not provide any mode by which these facts are to be ascertained ; no vote of the people, no petition is required, but the trustees are peremptorily required to lay off the township into districts, and they are directed in so doing, to suit the wishes and convenience of the inhabitants of the township. There being no mode provided by the act by which this is to be accomplished, the board must necessarily take the responsibility of deciding the question, acting upon the best lights before them, and exercising their best judgment. They must perform that duty, and their honest action cannot, in this manner, be inquired into.

But, we apprehend, if the views of the defendants' counsel be correct, the validity of this order of October 5th would not be affected by it, for the power to alter and change districts when once established, is expressly given to the trustees, by the same section ; the only limitation being, that it shall be done at, a regular meeting of the board. The record shows that this con-

solidation of districts, which is no more than a change of the districts, was at the regular October meeting, held for the purpose of equalizing certain districts. The alterations and change are, and must be, peculiarly within the control of the board, and if they err in their action, no fraud or corruption being charged, this court cannot interfere. No palpable case is made out—no gross injustice, oppression or corruption is shown.

But if it could be shown that the order changing the districts by consolidating two districts into one, was an unwarrantable exercise of power, it might, with propriety, be claimed that there has been an acquiescence in it by the functionaries of the now complaining district nine.

The evidence is, that the consolidation was made by an order, passed October 5th, 1857, and that immediately thereafter, the trustees of nine surrendered to the trustees of the district as consolidated, the possession of their school-house, and all the books, papers and property belonging to district nine. The new directors of the consolidated district took possession of all of it, employed teachers, and maintained schools in it, from that time until this bill was filed. The inhabitants of district nine sent their children to these schools—many of them voted at the elections held under the school law in the new district, and many of them were voted for, for offices in the district. The directors of the consolidated district, at the request of the old directors of nine, paid a large sum of money on the indebtedness of nine. The inhabitants further recognized the consolidation by petitioning the trustees to rescind the order of consolidation, and place them back in their old district. These acts go far to show an acquiescence in the action of the trustees of the township, and, at any rate, relieve the case from any imputation of gross injustice, oppression, or compulsion, and they constitute, at least, good grounds for the refusal of the restraining power of a court of chancery. These acts, so acquiesced in, constitute the directors, who levied the tax in the consolidated district, officers *de facto*, at least, and as against them and their acts, the remedy is at law. The tax was levied at the time prescribed by law, and on property subject to taxation for school purposes in the district, and no irregularity is charged upon the mode or object.

We have said in *Merritt* v. *Farris*, 22 Ill. R. 303, that where irregularities are charged, equity will not restrain the collection of a tax levied by officers *de jure* or *de facto*, much less then when no irregularities are charged. And the same point was ruled in *Munson* v. *Minor*, ib. 602. In this case, the court say: It is believed, the cases are rare, even where the tax had been levied by persons having no pretense of legal authority to make

such levy, or in cases where the tax was not authorized by law, or where the warrant for its collection was void, that courts have interposed to stay its collection. But in case of a levy of an illegal tax, a court of law has jurisdiction. If persons having no pretense of legal authority were to levy a tax, or if persons not holding an office to which the power to levy a tax is incident, or holding an office to which it is not incident, were to levy a tax, the court might interpose. But if officers *de facto* or *de jure*, exercising an office to which the power is incident, exercise it, the court will not interpose to prevent its collection.

We cannot, in such a case as this, try the right of the directors who levied this tax, to hold their office, and do the act in virtue of it. If the tax is illegal and is collected, the remedy at law is complete to recover back the money paid. The right to exercise the office of director can be inquired into by *quo warranto*, or the original proceedings brought up on *certiorari* and revised.

The remedy of the defendants, in every view of this case, if there be a wrong, is at law; but we think no wrong or injustice has been done, such, at least, as will warrant our interference. The decree of the court below is reversed, and the bill dismissed.

*Decree reversed.*

WALKER, Justice, did not take part in this decision.